GEORGE WEBER, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weber v. Commissioner
Docket No. 13622-92
United States Tax Court
T.C. Memo 1995-125; 1995 Tax Ct. Memo LEXIS 130; 69 T.C.M. (CCH) 2216; March 27, 1995, Filed *130 Decision will be entered under Rule 155. George Weber, pro se. For respondent: Carol-Lynn E. Moran. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(1)(A) 1984
$ 11,879
$ 5,940
--  1985
7,953
3,977
--  1986
11,608
--  $ 8,706
1987
10,554
--  7,916
Additions to Tax
Sec.
Sec.
Year
6653(b)(1)(B) 6653(b)(2)
1984
--
[1] 1985
--
[1] 1986
[1]
--
1987
[1]
--
All section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated. The issues are: (1) Whether and to what extent petitioner is entitled to Schedule A deductions; (2) whether petitioner's correct filing status for 1984 and 1986 is married filing separately; and (3) whether petitioner is liable for the fraud additions for each of the years in issue. FINDINGS OF FACT When the petition in this *131 case was filed, petitioner resided in Ridley Park, Pennsylvania. Some of the facts in this case are deemed admitted from petitioner's failure to file a reply to respondent's answer; other facts are found from the record at trial. During each of the taxable years in issue, petitioner was a unionized boilermaker working out of Boilermakers Local #13 in Newportville, Pennsylvania. Petitioner failed to file individual Federal income tax returns for the taxable years 1984, 1985, 1986, and 1987 until ordered to do so by the Federal District Court, pursuant to a criminal plea agreement. During the years in issue, petitioner received wages in the following amounts: 1984 -- $ 41,237; 1985 -- $ 33,565; 1986 -- $ 41,622; 1987 -- $ 43,829. In order to avoid withholding Federal income tax from his pay, petitioner filed Forms W-4 with his employers claiming to be exempt from Federal withholdings. Petitioner was the defendant in the criminal case of United States of America v. George Weber, (D. Del., Criminal Action #90-73-JTF). Petitioner pled guilty to Count 4 of an 8-count indictment. Count 4 charged petitioner with receiving taxable income of about $ 37,812 during 1987, upon which *132 an income tax of about $ 9,784 was payable (of which about $ 3,131 had been collected through employee withholding); and that petitioner willfully attempted to evade and defeat the additional $ 6,653 of income tax due and owing by failing to file an income tax return on or before April 15, 1988, and by claiming on Forms W-4 filed with his employers that he was exempt from Federal income tax withholding, in violation of 26 U.S.C. sec. 7201 (1988). Petitioner was sentenced by Judge Joseph J. Farnan, Jr., of the United States District Court for the District of Delaware, to three years' probation, with 4 months of the probation to be served in a combination of community and home confinement. During this confinement petitioner was permitted to receive alcohol treatment and go to work. He was also required to cooperate fully with the IRS regarding payment of taxes, penalties and interest and to provide the probation officer with copies of his Federal income tax returns, while on probation. Petitioner was fined $ 50. On a separate printed form entitled "Restitution and Forfeiture" petitioner was required to make restitution to the IRS in the amount *133 of $ 26,448. Payments were to be made to the United States Attorney for transfer to the payee in installments "as arranged between the Internal Revenue Service and defendant and approved by the U.S. Probation Office; the total amount payable within the probationary term." Page 5 of the judgment under "statements of reasons" indicates that the fine is waived or is below the guideline range because of the defendant's ability to pay and that restitution (a separate category) of $ 26,448 is to be paid. A line reading "full restitution is not ordered for the following reason(s)" is not checked. As of December 1, 1993, the current balance of restitution owed to the IRS was $ 22,210. Petitioner was continuing to make monthly payments to his probation officer, for transmittal to the IRS as ordered by the District Court. Petitioner's arrangement approved by the U.S. Probation Office was as follows. If he was working regularly, he paid $ 250. If he was working less, he would pay an amount ranging from a minimum of $ 50 to $ 250 per month. He has made these payments faithfully. He believed the payments were being transferred to IRS and applied to his income tax liability for the *134 years in issue. However, the payments are not shown on petitioner's IRS transcript of account for the years in issue. Respondent conceded after trial that at least some of the payments were received and applied by respondent to 1978 and 1979 tax years. The memorandum of plea agreement signed by the United States Attorney and petitioner and accepted by Judge Farnan required petitioner to prepare accurate Federal income tax returns for the years 1984 through 1987 prior to sentencing, and to provide copies of those returns to the United States Attorney's Office for the District of Delaware. To comply with the plea agreement, petitioner's attorney hired Linda K. Kline, a certified public accountant to prepare petitioner's returns. Petitioner provided Ms. Kline with documents which substantiated deductions for the payment of property taxes, automobile loan interest, and union dues. Ms. Kline also computed interest "as per tax examiner's work papers"; i.e., the IRS agent. The returns show petitioner's filing status for 1984 and 1986 as "married, filing jointly" with exemptions for two children. Filing status used for 1985 and 1987 is "married filing separately", since petitioner's *135 wife, Nancy Weber, had already filed separately in those years. Petitioner did, in fact, live with his wife and two children during the years in issue. The returns show taxes due as follows: 1984 -- $ 6,398; 1985 -- $ 7,229, minus Federal income tax withheld of $ 162, for a total due of $ 7,067; 1986 -- $ 6,249, minus Federal income tax withheld of $ 680, for a total due of $ 5,569; 1987 -- $ 9,766, minus Federal income tax withheld of $ 3,130, for a total due of $ 6,636. The total of the amount owed (without interest or additions) is $ 25,670. [1]
It is unclear what happened to the original returns prepared *136 on petitioner's behalf. Unsigned copies were given to the probation officer and Revenue Agent. The evidence as to whether petitioner actually signed the returns is conflictive. However, we find that he did sign the returns. IRS Revenue Agent William Hudson received unsigned copies of petitioner's returns for 1984 through 1987, which he did not file. [2] However, an IRS employee told petitioner his returns were filed October 22, 1991. Apparently, the returns to which the employee referred were dummy returns prepared by respondent. [2]
OPINION By a combination of documents and his own testimony, which we find to be credible, petitioner substantiated to our satisfaction that he is entitled to the deductions claimed on Schedule A of his unfiled returns. Petitioner claims entitlement to joint filing status for the years 1984 and 1986, because Mrs. Weber apparently did not earn sufficient income to *137 file a return in those years. Married individuals must file joint returns in order to elect the tax rates provided in section 1(a). Thompson v. Commissioner, 78 T.C. 558 (1982); Trolinger v. Commissioner, T.C. Memo. 1988-333. If petitioner had indeed filed joint returns, he may have qualified for joint filing status. However, no returns were filed. Moreover, Mrs. Weber did not sign the returns or manifest in any other way her willingness to be held jointly liable for the taxes on petitioner's income. We cannot and do not impute such an intent to her. See Gudenschwager v. Commissioner, T.C. Memo. 1989-6; Kartrude v. Commissioner, T.C. Memo. 1988-498, affd. in part, revd. in part 925 F.2d 1379 (11th Cir. 1991). Thus, petitioner's correct status is "married filing separate". We next determine the number of personal exemptions petitioner is entitled to claim for 1984 and 1986, when Mrs. Weber did not file a return. Section 152 defines a dependent as an individual "over half of whose support, for the calendar year in which the *138 taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer)". Petitioner lived with his wife and children throughout 1984 and 1986. We find he provided over half the support for his children, since Mrs. Weber did not have sufficient gross income to be required to file a return. We thus hold that petitioner is entitled to claim personal exemptions for his children for the 1984 and 1986 years. Section 151(b) allows a taxpayer a personal exemption for one's spouse "if a joint return is not made by the taxpayer and his spouse, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer." We find that petitioner's spouse did not have gross income and that she was not the dependent of another taxpayer for the 1984 and 1986 tax years; petitioner is thus entitled to claim a personal exemption for his spouse for those years. We turn now to the issue of fraud. Respondent determined in the notices of deficiency that petitioner is liable for the additions to tax for fraud under section 6653(b)(1) and (2) for 1984 *139 and 1985, and sections 6653(b)(1)(A) and (b)(1)(B) for 1986 and 1987. Respondent bears the burden of proof and must establish each element of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249; Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Wright v. Commissioner, 84 T.C. 636, 639 (1985). Respondent must prove fraud in each of the years involved. Drieborg v. Commissioner, 225 F.2d 216, 220 (6th Cir. 1955), affg. in part and revg. in part a Memorandum Opinion of this Court. Fraud is actual, intentional wrongdoing, and the intent is the specific purpose to evade a tax believed to be owing. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; *140 Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Respondent must show that petitioner intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of the tax. Stoltzfus v. United States, supra at 1004; Webb v. Commissioner, supra at 377. Fraud is never to be presumed. Toussaint v. Commissioner, 743 F.2d at 312; Webb v. Commissioner, 394 F.2d at 377. The existence of fraud is a question of fact to be determined on the basis of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud, however, can seldom be proved by direct proof of the taxpayer's intention. Fraud can be established by circumstantial *141 evidence and by reasonable inferences drawn from the taxpayer's entire course of conduct. Spies v. United States, 317 U.S. 492, 499 (1943); Toussaint v. Commissioner, 743 F.2d at 312; Gajewski v. Commissioner, supra at 200. Respondent contends, first, that petitioner is estopped to deny fraud for tax year 1987 by his guilty plea to a violation of 16 U.S.C. Sec. 7201. We agree with respondent. The elements of criminal tax evasion and civil tax fraud are similar. Gray v. Commissioner, 708 F.2d 243 (6th Cir. 1983), affg. T.C. Memo. 1981-1; Hicks Co., Inc. v. Commissioner, 470 F.2d 87, 90 (1st Cir. 1972), affg. 56 T.C. 982 (1971); Moore v. United States, 360 F.2d 353, 356 (4th Cir. 1965). Thus, a conviction for Federal income tax evasion, either upon a plea of guilty, or upon a jury verdict of guilt, conclusively establishes fraud in a subsequent civil tax fraud proceeding through application of the doctrine *142 of collateral estoppel. Gray v. Commissioner, supra at 246; Tomlinson v. Lefkowitz, 334 F.2d 262, 265 (5th Cir. 1964), and cases cited therein. We therefore hold that petitioner is liable for the fraud addition for tax year 1987. We turn now to the years 1984 through 1986. Courts frequently list various factors or "badges of fraud" from which fraudulent intent may be inferred. Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). Although such lists are nonexclusive, some of the factors present here which are indicative of fraud are (1) understatement of income, (2) failure to file tax returns, and (3) filing false Forms W-4. See, e.g., Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992) (citing Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601). Section 6653(b)(1) (in effect for 1984 and 1985) imposes an addition to tax in the amount of 50 percent of the entire underpayment of tax if any part of the underpayment is due to fraud. Respondent need not *143 prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. By contrast, section 6653(b)(1)(A) (applicable to 1986) imposes an addition of 75 percent of the portion of the underpayment attributable to fraud. Section 6653(b)(2), in effect for 1984 and 1985, and section 6653(b)(1)(B), in effect for 1986, apply only with respect to the portion of the underpayment attributable to fraud. Therefore, for purposes of those additions, respondent must prove by clear and convincing evidence the portion of the underpayment attributable to fraud for each of the years at issue. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Franklin v. Commissioner, T.C. Memo. 1993-184; see also Estate of Stimson v. Commissioner, T.C. Memo. 1992-242; *144 Bingo v. Commissioner, T.C. Memo 1991-248, affd. without published opinion 987 F.2d 774 (11th Cir. 1993). For purposes of section 6653(b)(1)(B), if respondent shows any portion of the underpayment to be attributable to fraud, the burden shifts to the taxpayer to establish that the remainder is not attributable to fraud. Sec. 6653(b)(2), as in effect for 1986. Section 6653(c) defines an underpayment generally as a deficiency as defined by section 6211, except that: for this purpose, the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing * * *
Thus, if a return is timely filed, the underpayment generally is the difference between the correct tax and the tax shown on the timely filed return. Levinson v. United States, 496 F.2d 651, 655 (3d Cir. 1974) (citing Papa v. Commissioner, 464 F.2d 150 (2d Cir. 1972), revg. on another issue T.C. Memo 1970-90). *145 If a return is not timely filed, however, the underpayment generally is the total tax liability without reduction for the amount shown on a late return. Cirillo v. Commissioner, 314 F.2d 478, 484 (3d Cir. 1963), affg. in part, revg. in part T.C. Memo. 1961-192; see also Tomlinson v. Lefkowitz, 334 F.2d 262, 267 (5th Cir. 1964). Respondent must prove by clear and convincing evidence the two elements of fraud: (1) The existence of an underpayment of tax each year, and (2) that some part of the underpayment is due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Mosteller v. Commissioner, T.C. Memo. 1986-505, affd. without published opinion 841 F.2d 1123 (4th Cir. 1988). Failure to file timely returns is persuasive circumstantial evidence of fraud. Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Stoltzfus v. United States, 398 F.2d at 1005. Similarly, although a mere *146 understatement of income does not constitute proof of fraud, a pattern of consistent and substantial understatement of income is by itself strong evidence of fraud. Korecky v. Commissioner, 781 F.2d at 1568; Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172. Late filed returns do not negate a preexisting fraudulent failure to file (i.e., a failure to file due to fraud with intent to evade taxes). Bennett v. Commissioner, 30 T.C. 114 (1958); cf. Badaracco v. Commissioner, 464 U.S. 386, 400-401 (1984). Petitioner consistently failed to file income tax returns over a number of years. He knew he had a duty to file, because he had filed returns until 1981 or 1982. He deliberately filed false and fraudulent Forms W-4 with various employers to prevent taxes from being withheld from his wages. We find that respondent has met her burden of proving an underpayment in each of the years in issue, and that petitioner is liable for additions to tax for fraud. We further find that the entire underpayment *147 is due to fraud. With regard to the payments petitioner made to his probation officer for transmittal to respondent, petitioner asserts that such amounts should be credited to the deficiencies and additions to tax at issue. The jurisdiction of the Tax Court is generally limited to redetermining the correct amount of a deficiency. Sec. 6214(a); Murphree v. Commissioner, 87 T.C. 1309 (1986). Sec. 6211(a)(1)(A) provides in pertinent part: SEC. 6211(a) In General. -- For purposes of this title * * * the term "deficiency" means the amount by which the tax imposed * * * exceeds the excess of -- (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over --
(2) the amount of rebates, as defined in subsection (b)(2), made.
The payments made to petitioner's probation officer were not amounts previously assessed (or collected without assessment) as a deficiency, for any of the years in issue. The amounts of the deficiencies for *148 those years had not been determined at that point, and no notice of deficiency had been issued. The payments are not shown on petitioner's IRS transcript of account for the years in issue. Cf. Anderson v. Commissioner, 11 T.C. 841 (1948). We lack jurisdiction to determine how such payments shall be applied. [3]
*149 To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest payable under sec. 6601 with respect to the portion of the underpayment attributable to fraud.↩
1. There is a $ 778 difference between the amounts shown on the returns and the total "restitution fee" of $ 26,448. We are not able to reconcile these amounts. This amount may represent the difference between petitioner's returns and respondent's returns made for him which did not allow petitioner to itemize. Respondent calculated petitioner's rate as married filing separate, with only himself as a dependent.↩
2. The originals may have been given to the District Court and somehow never found their way officially to respondent.↩
3. Respondent originally contended that no such payments had ever been received. However, she now concedes that at least some payments were received but credited to earlier years. Respondent agrees that the payments should be credited. In a post-trial letter to the Court dated Feb. 24, 1994, and filed as a status report, respondent's counsel stated: I have been working on locating the payments petitioner made in regard to years in issue. Some of the payments have been located in his accounts for the 1978 and 1979 tax years. Upon receiving the payments, it appears as though the Internal Revenue Service applied them to the earliest years petitioner owed taxes. I am in contact with the petitioner's probation officer to make sure petitioner gets full credit for the payments he made.↩