105 T. C. No. 29


UNITED STATES TAX COURT


JOHN U. FAZI AND SYLVIA FAZI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13874-93.                    Filed December 19, 1995.


        P, a dentist, incorporated C and established three
pension plans.  P was an employee of C.  Plan 2 was
frozen in 1982.  Plan 2 was merged into plan 1 in 1986.
P dissolved C in 1986 and distributed all of the assets
in the plan 1 trust to employees, including P, in 1987.
We held in <u>Fazi v. Commissioner</u>, 102 T.C. 695 (1994)
(Fazi I), that plan 1 was not qualified and its related
trust was not exempt during 1985, 1986, and 1987.  We
also held that, except for amounts conceded by R, P was
taxable in 1987 on the assets distributed to P from
plan 1.  In Fazi I, R conceded on brief that the
taxable distribution to P from plan 1 for 1987 had to
be reduced by contributions made on P's behalf for 1985
and 1986, including P's share of the amount merged from
plan 2 to plan 1 during 1986.  This concession was
accepted without review or analysis of the underlying
substantive issues related to the concession.

R determined that P is taxable in 1986 on the amounts contributed to plans 1 and 3 on his behalf for that year, including the amount merged from plan 2 into plan 1. R's notice of deficiency was mailed more than 3 years, but less than 6 years, after the filing of P's 1986 tax return. R now admits that, but for judicial estoppel, P should not be taxed in 1986 on his share of the merged amount, but rather when it was distributed to him in 1987. P argues that judicial estoppel does not apply and that R is barred by the statute of limitations from asserting a deficiency for 1986.

Held, P's share of the merged amount is not taxable to P in the year of merger; Fazi I clarified. Held, further, judicial estoppel does not prevent P from denying liability. Held, further, the 1986 tax year is not open for redetermination.

Paul A. Kasicky, for petitioners.

Julia L. Wahl and Janine H. Bosley, for respondent.

OPINION

VASQUEZ, Judge: Respondent determined a deficiency in petitioners' 1986 Federal income tax in the amount of $160,904. The deficiency is attributable to the merger of plan 2, a qualified pension plan, into plan 1, an unqualified pension plan, and actual corporate contributions made to unqualified pension plans 1 and 3 on petitioners' behalf.[1] The 1986 tax year is only

---

[1] Plan 1 and its related trust were retroactively disqualified in Fazi v. Commissioner, 102 T.C. 695, 706 (1994), for plan years ending in 1985, 1986, and 1987. The parties have stipulated that plan 3 and its related trust were disqualified for the same reasons plan 1 was disqualified, for plan years ending 1985, 1986, and 1987. However, the parties have not stipulated whether plan 2 was disqualified prior to its merger into plan 1 in 1986. The only reference the parties make to plan 2 is that it was frozen in 1982.

(continued...)

open for redetermination if section 6501(e)(1),[2] the 6-year

statute of limitations, applies. Section 6501(e)(1) can only

apply if the amount merged from the qualified pension plan to the

unqualified pension plan (the merged amount) is properly

includable in petitioners' income in the year of the merger,

1986. Consequently, we must first decide whether the merged

amount is properly includable in petitioners' 1986 income as a

contribution or by application of the doctrine of judicial

estoppel.[3] If the year is open for redetermination, we must also

decide whether contributions made by the corporation to

unqualified pension plans in 1986 on behalf of petitioners are

taxable to petitioners when contributed and whether an increase

in the vested account balance of petitioners in an unqualified

pension plan is taxable to petitioners in 1986, the year of the

increase.

## Background

This case was submitted fully

stipulated. All of the facts are stipulated and are so found.

---

[1](...continued)
Respondent states in her brief that plan 2 was qualified. We will treat this
as a concession on respondent's part that plan 2 was qualified.

[2] Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

[3] Respondent determined in the notice of deficiency that the merged amount
should be treated as a contribution. Respondent's briefs argue that
petitioner should be judicially estopped from denying that the merged amount
is taxable as a contribution. We are not ruling on, and express no opinion
on, whether the merged amount could constitute a distribution.

The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners were married to each other at all relevant times and resided in Weirton, West Virginia, at the time the petition was filed. Petitioners, John U. Fazi (Mr. Fazi) and Sylvia Fazi (Mrs. Fazi), were employees of Dr. J.U. Fazi, Dentist, Inc. (corporation), a West Virginia corporation.

The corporation established and operated three employee pension benefit plans: (1) The Dr. J.U. Fazi, Dentist, Inc. Employees Pension Plan, a money purchase pension plan (plan 1); (2) the Dr. J.U. Fazi, Dentist, Inc. Employee Profit Sharing Plan (plan 2); and (3) the Dr. J.U. Fazi, Dentist, Inc. Retirement Plan, a defined benefit plan (plan 3).

Plan 1, when originally adopted by the corporation in 1972, was qualified[4] under section 401, and the accompanying trust was a qualified, tax-exempt trust under section 501. Plan 1 and its trust maintained their qualified status until the plan year ending August 31, 1985. We held in Fazi v. Commissioner, 102 T.C. 695 (1994) (Fazi I), that plan 1 was not qualified, and its employee trust was not exempt, for the plan years ending in 1985, 1986, and 1987 due to the corporation's failure to adopt formally

---

[4] Throughout the relevant statutes, regulations, and opinions of the courts, the terms "qualified" and "exempt" have occasionally been used synonymously, and the terms "unqualified and nonexempt" have also been synonymously used. For convenience, the terms "qualified" and "unqualified" may be used in situations where they refer to or modify the employee trust, rather than the plan.

a plan complying with changes made in the applicable law by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324; the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98-369, 98 Stat. 494; and the Retirement Equity Act of 1984 (REA), Pub. L. 98-397, 98 Stat. 1426.

The corporation contributed $29,152 to the plan 1 account of Mr. Fazi and $3,950 to the plan 1 account of Mrs. Fazi for the year ending August 31, 1986. Mr. Fazi was 100 percent vested in his plan 1 account during the 1985 and 1986 plan years. Mrs. Fazi was 60 percent vested in her plan 1 account in 1985 and 80 percent vested in 1986. Consequently, Mrs. Fazi's vested interest in the 1986 contribution was $3,160. Mrs. Fazi's increased vesting from 1985 to 1986 resulted in her becoming vested in an additional $750 from contributions made to her account in plan 1 for years prior to the plan year ending August 31, 1986.

Plan 2, when originally adopted by the corporation in 1972, was qualified under section 401, and the accompanying trust was a qualified, tax-exempt trust under section 501. Plan 2 was frozen as of August 31, 1982, and was subsequently merged into plan 1 on or about May 31, 1986. (This merger will hereinafter be referred to as the plan merger.) The plan 2 assets were transferred to the plan 1 trust. Mr. Fazi's account under plan 1 increased by $277,138 as a result of the plan merger (the amount of his

account in plan 2). Mr. Fazi was 100 percent vested in his plan 2 account at the time of the plan merger.

Plan 3, when originally adopted by the corporation in 1979, was qualified under section 401, and the accompanying trust was a qualified, tax-exempt trust under section 501. Plan 3 and its trust were disqualified by respondent, for the same reasons plan 1 was disqualified, for the plan years ending August 31, 1985, August 31, 1986, and August 31, 1987.

The corporation contributed $10,300 to the plan 3 account of Mr. Fazi for the year ending August 31, 1986. Mr. Fazi was 100 percent vested in his account during the 1985 and 1986 plan years.

Petitioners received no distributions from plans 1, 2, or 3 in 1986. In 1987, petitioners' accounts in plan 1 were distributed to them. This distribution included the $277,138 amount merged into plan 1 from plan 2, the merged amount.

All of the plans were operated in compliance with the amendments required by TEFRA, DEFRA, and REA for all relevant plan years.

Petitioners filed their 1986 Federal income tax return on April 15, 1987. The amount of gross income stated in petitioners' 1986 Federal income tax return and their share of income from pass-through entities totals $395,108. Petitioners' 1986 Federal income return made no references to the plan merger

or the merged amounts.  Respondent mailed petitioners a notice of deficiency on March 31, 1993.

Fazi I

A review of the arguments and our holding of Fazi I is necessary to understand the issues in this case.  Fazi I dealt with the taxability of the distributions from disqualified plan 1 in 1987.  Mr. Fazi dissolved the corporation in 1986 and distributed all of the assets in the plan 1 trust to the employees during 1987.  Mr. Fazi timely attempted to roll over his distribution to an individual retirement account.  Although plan 1 was in operational compliance at all times, we held that "petitioners are taxable on the distributions received to the extent they exceed contributions made for or by them for 1985 and 1986, including the amount merged from plan 2 to plan 1 during 1986."  Fazi I, 102 T.C. at 714.  In so holding, we overruled our decision in Baetens v. Commissioner, 82 T.C. 152 (1984), revd. 777 F.2d 1160 (6th Cir. 1985), which would have allowed distributions attributable to amounts contributed while plan 1 was qualified to be rolled over, tax free, into an individual retirement account.

The rationale for exempting amounts contributed to the unqualified plan in 1985 and 1986 from taxation when distributed in 1987 was that those amounts were taxable to petitioners when the contributions were made:  "respondent has conceded that the taxable distribution for 1987 should not include those

contributions made during 1985 or 1986 because they would be taxable to petitioners in the years contributions were made to an unqualified trust and not at the time of distribution."  Fazi I, supra at 713.

Respondent conceded in Fazi I that the merged amount would be taxable in 1986, rather than 1987.  Petitioners, in Fazi I, argued for taxing the merged amounts prior to 1987, rather than in 1987, albeit on different theories.[5]  We accepted respondent's concession in Fazi I as to the timing of the taxability of the merged amount without analysis of the underlying substantive issues.

## Discussion

Whereas Fazi I dealt with the taxability to petitioners of distributions made in 1987 from a nonexempt trust, this case deals with the taxability to petitioners of contributions to a nonexempt trust by the corporation in 1986 and whether the merged amount should be taxed in the same manner as a contribution.  We must first decide if petitioners should be taxed on the merged amount in 1986.  Only if the merged amount is properly includable in petitioners' gross income in 1986 is the 6-year limitations period applicable and the year open to adjustment.  If the merged

---

[5]  Petitioners argued that secs. 83 and 402(b) combined to make incremental increases in their interests in the nonexempt trusts taxable, though not because they were "contributions" in the traditional usage of the word. Petitioners also argued that the merged amount would be taxable in years prior to 1987 because, under secs. 402(b)(1) and 72, their interests in the nonexempt trust were "made available" to them in such prior years.

amount is not properly includable in 1986, the 6-year limitations period will not apply and the other adjustments set forth in the notice of deficiency will be barred since the sum of those other adjustments does not exceed 25 percent of petitioners' gross income.  The Court, in Fazi I, did not purport to decide the taxability of amounts in 1986; it could only determine tax liability for 1987.  Sec. 6214(b).

Taxability of the Merged Amount

In this case, respondent originally argued that the merged amount was taxable to petitioners in the year of merger, 1986. She now concedes that the merged amount should have been taxed in 1987, the year it was distributed to petitioners.[6]  Respondent states on brief that:

> Upon reconsideration, however, respondent's interest in sound tax administration requires that she inform the Court that she has reached a different conclusion.  The correct result in Fazi I would have been to include the full amount of Plan 002 assets in petitioners' income for 1987.  In respondent's view, the merger of Plan 002, a qualified plan, with Plan 001, a nonqualified plan, resulted in the immediate disqualification of Plan 002.  The 1986 merger did not represent a "contribution" to Plan 001, but rather a pooling of nonqualified assets all of which should have been taxed on distribution in 1987, consonant with the remainder of the Court's opinion in Fazi I and with I.R.C. sec. 402(b)(2) and Treas. Reg. sec. 1.402(b)-1(c).

In Fazi I, we accepted respondent's concession that the merged amount was not taxable in 1987.  Consequently, we are reluctant

---

[6]  Respondent, in Fazi I, originally argued that the merged amount was taxable to petitioners in 1987, but later conceded that it was properly taxable in 1986.  Hence, respondent's position on this issue has come full circle.

to accept her concession in this case that the merged amount is taxable in 1987 without substantive review.

Plan 1 became unqualified and its accompanying trust became nonexempt starting with its plan year ending August 31, 1985. Plan 2 was merged into plan 1 in May of 1986. The single plan and trust remaining after the merger was plan 1, the survivor of the merger. Section 402(b) governs the tax treatment of a beneficiary of a nonexempt trust:

> (b) TAXABILITY OF BENEFICIARY OF NONEXEMPT TRUST.--Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employee's interest in the trust shall be substituted for the fair market value of the property for purposes of applying such section. * * *

Pursuant to the general rules of section 83, the merged amount would be taxable to petitioners in 1986 only if it was a contribution by the employer. If a defined contribution plan, such as a money purchase plan or a profit sharing plan is not qualified, the participant is taxed on the amount contributed and allocated to the participant's account during the nonqualified years to the extent substantially vested. Sec. 1.402(b)-1(a)(1), Income Tax Regs. Mr. Fazi was fully vested in both plans 1 and 2. There were no distributions from any plan in 1986. The survivor of the merger was a nonqualified plan, plan 1.

Therefore, the issue becomes whether the merged amount is the equivalent of an employer contribution to a nonqualified plan.

The employer, the corporation, had already contributed the assets to the frozen plan, plan 2, prior to 1983; it could not contribute assets that it did not own. In Albertson's, Inc. v. Commissioner, 95 T.C. 415, 426 (1990), affd. 42 F.3d 537 (9th Cir. 1994), the Court stated:

> Contributions to qualified plans are held and invested by the trustee or insurance company until the time of distribution to the employee. The assets contributed to the trustee or insurance company cease to be assets of the employer and are not subject to the debts, obligations, and creditors of the employer. * * *

A review of the law applicable to plan mergers is necessary to determine if a plan beneficiary should be taxed when pension plans merge. The regulations define a merger of plans to mean a "combining of two or more plans into a single plan." Sec. 1.414(l)-1(b)(2), Income Tax Regs. Although the regulations are specific and detailed concerning the requirements of a plan merger, there is no reference to beneficiaries' being taxable as a consequence of a plan merger. The legislative history of section 414(l) is also devoid of any suggestion that a merger could constitute a taxable event for a beneficiary.

The case closest to point is William Bryen Co. v. Commissioner, 89 T.C. 689 (1987). In that case, an unqualified money purchase plan was merged into an otherwise qualified money purchase plan, resulting in the disqualification of the surviving

plan.  The Court referred to the merger as a "pooling" of the two plans.  Id. at 693.  The Court did not hold, or even mention, if the merged amount constituted a contribution.

In our case, if the merged amount were a contribution by the corporation, then plan 1 would have been grossly overfunded for 1986.  The parties have stipulated that the plans were in operational compliance; i.e., not overfunded.

As respondent acknowledges, the merger, or pooling, of an exempt trust into a nonexempt trust is not a contribution.  Therefore, a plan merger is not a contribution that creates income for the beneficiaries of a surviving trust.  Mr. Fazi did not receive a net increase in his account balances; his account balance in plan 1 increased by the same amount that his account balance in plan 2 decreased.  Contrary to respondent's claims, the Court in Fazi I merely accepted respondent's incorrect concession that the merged amount was not taxable in 1987; we did not hold that the merged amount was a contribution to the surviving plan.[7]

---

[7]  In Fazi I, 102 T.C. at 703 n.7, we stated:  "Further, respondent points out that the merging of plan 2 into plan 1 during 1986 would be taxable in 1986, rather than in 1987 as determined in the notice of deficiency."  (Emphasis added.)  We further stated:

> respondent has conceded that the taxable distribution for 1987 should not include those contributions made during 1985 or 1986 because they would be taxable to petitioners in the years contributions were made to an unqualified trust and not at the time of distribution.  Additionally, because the amount in plan 2 was merged into plan 1 during May 1986, a year in which the plans and the trusts were unqualified, that amount would likewise be taxable in 1986, rather than 1987.  [Id. at 713; emphasis added.]

It is within this Court's discretion to accept or reject a concession. However, acceptance of a concession does not mean that the Court has evaluated and accepted the underlying substantive issues or legal principles supporting the concession. We may accept a concession or choose to decide the underlying substantive issues as justice requires. Jones v. Commissioner, 79 T.C. 668, 673 (1982); McGowan v. Commissioner, 67 T.C. 599, 601, 605 (1976). As a practical matter, the Court may accept concessions of law in the interests of judicial economy. The parties, in Fazi I, chose to focus their time and energy on arguing whether we should overrule Baetens v. Commissioner, 82 T.C. 152 (1984), revd. 777 F.2d 1160 (6th Cir. 1985). The issue of taxability of the merged amount in 1987 was conceded by respondent on brief; it was not a contested issue. The Court, in Fazi I, did not purport to rule as to the merits of this issue.

To the extent, if any, that Fazi I states that a merger of a frozen pension plan into an unqualified plan is taxable to the beneficiaries in the year of merger, it is dicta. However, the issue of whether the merged amount is taxable to petitioners in 1986 does not end here.

Are Petitioners Judicially Estopped from Asserting that the Merged Amount is not Taxable in 1986

Respondent, on brief, attempts to raise the doctrine of judicial estoppel against petitioners. Petitioners correctly point out that Rule 39 requires avoidance or affirmative

defenses, including estoppel, to be set forth in a party's pleadings. Respondent, in violation of Rule 39, did not plead judicial estoppel. Therefore, respondent cannot raise the doctrine of judicial estoppel for the first time in her briefs. Barbados #7 v. Commissioner, 92 T.C. 804, 813 (1989). However, the purpose of the doctrine is to protect the courts, not the parties. "The doctrine of estoppel is intended to protect the courts rather than the litigants, so it follows that a court, even an appellate court, may raise the estoppel on its own motion in an appropriate case." In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990) (fn. ref. omitted) (citing Allen v. Zurich Ins. Co., 667 F.2d 1162, 1168 n.5 (4th Cir. 1982)). The United States Court of Appeals for the Fifth Circuit acknowledged the right of appellate courts to raise the doctrine of judicial estoppel but reserved doing so "Absent a flagrant threat to the judicial process". American Bank v. C.I.T. Constr., 944 F.2d 253, 258 (5th Cir. 1991). We have recently raised the doctrine of judicial estoppel sua sponte in Shackelford v. Commissioner, T.C. Memo. 1995-484. We conclude that the Court may consider the issue of judicial estoppel in the present case.

Respondent argues that petitioners are judicially estopped from arguing that the merged amounts are not taxable as contributions in 1986 because, in Fazi I, petitioners successfully asserted the position that the merged amount was taxable prior to 1987. Petitioners argue that judicial estoppel

does not apply since they never maintained the position that the

merged amount was a contribution, their position was not accepted

by the Court since respondent conceded it, and references in

Fazi I to the 1986 tax year are just dicta.  For the reasons

explained below, we believe that petitioners have the better

argument.

The Tax Court unequivocally accepted the doctrine of

judicial estoppel in Huddleston v. Commissioner, 100 T.C. 17, 28-

29 (1993):

> We hold that the doctrine of judicial estoppel is
> available in the Tax Court to be used in appropriate
> cases, such as the one before us, to prevent parties
> from taking positions that are inconsistent with those
> previously asserted by the parties and accepted by
> courts and that would result in inappropriate and
> prejudicial consequences to the courts.

We used judicial estoppel in Huddleston to prevent the petitioner

in that case from denying that he had fiduciary authority to act

on behalf of a decedent's estate.  Judicial estoppel may apply to

issues of law as well as factual issues:  "In certain

circumstances a party may properly be precluded as a matter of

law from adopting a legal position in conflict with one earlier

taken in the same or related litigation."  Allen v. Zurich Ins.

Co., supra at 1166; see In re Cassidy, supra at 641; Reynolds v.

Commissioner, 861 F.2d 469 (6th Cir. 1988).  Judicial estoppel

must be used with caution:  "Judicial estoppel is applied with

caution to avoid impinging on the truth-seeking function of the

court because the doctrine precludes a contradictory position

without examining the truth of either statement."  Teledyne
Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990); see
Allen v. Zurich Ins. Co., supra at 1166.

Petitioners cite Huddleston for the proposition that
judicial estoppel requires a party to have "affirmatively
persuaded a court" to accept their "particular position".
Huddleston v. Commissioner, supra at 26.  "Judicial estoppel
generally requires acceptance by a court of the prior position".
Id.  The Court later defined what it meant by "acceptance":

> Acceptance by a court does not mean that the party
> being estopped prevailed in the prior proceeding with
> regard to the ultimate matter in dispute, but rather
> only that a particular position or argument asserted by
> the party in the prior proceeding was accepted by the
> court.  [Id.; citation omitted.]

The Court in Fazi I did not accept an argument or position of
petitioners; it accepted respondent's concession.

Judicial estoppel is a doctrine adopted to protect the
Court; the Court has discretion as to when it should be used:
"Estoppel is an equitable concept, and its application is
therefore within the court's sound discretion."  In re Cassidy,
892 F.2d at 642.  Petitioners' actions are not causing any
"inappropriate and prejudicial consequences" to the Court.  We
have not been misled or whipsawed by petitioners; any loss to the
revenue has been the direct result of respondent's erroneous
concession in Fazi I.  The elements required for judicial

estoppel, as established by the Court in <u>Huddleston</u>, are not present in this case.

<u>Has the 3-Year Statute of Limitations Run Against Respondent</u>

Section 6501(a) generally provides that any tax due may be assessed within 3 years from the later of the due date of the return or the date the tax return is actually filed.  <u>Coleman v. Commissioner</u>, 94 T.C. 82, 89 (1990); <u>Bailey v. Commissioner</u>, T.C. Memo. 1970-64, affd. per curiam 439 F.2d 723 (6th Cir. 1971). However, section 6501(e)(1)(A) provides that any tax due may be assessed within 6 years from the later of the due date of the return or the date the tax return is actually filed where a taxpayer, on the tax return, omits from gross income an amount properly includable therein that is in excess of 25 percent of the amount of gross income reported on the tax return.  <u>Colony, Inc. v. Commissioner</u>, 357 U.S. 28, 36 (1958); <u>Estate of Frane v. Commissioner</u>, 98 T.C. 341, 354 (1992), affd. in part, revd. in part 998 F.2d 567 (8th Cir. 1993); <u>Bailey v. Commissioner</u>, <u>supra</u>. Respondent has the burden of proof, under section 6501(e), to show:  (1) That the amount omitted from gross income exceeds 25 percent of the gross income reported on the tax return; and (2) that the amount omitted from gross income was properly includable in the taxpayer's gross income.  <u>Colestock v. Commissioner</u>, 102 T.C. 380, 383 (1994); <u>Bardwell v. Commissioner</u>, 38 T.C. 84, 92 (1962), affd. 318 F.2d 786 (10th Cir. 1963); <u>Reis v. Commissioner</u>, 1 T.C. 9, 12-13 (1942), affd. 142 F.2d 900 (6th

Cir. 1944). The above factors must be shown by a preponderance of the evidence. <u>Armes v. Commissioner</u>, 448 F.2d 972, 974 (5th Cir. 1971), affg. in part and revg. T.C. Memo. 1969-181.

We explained the mechanics of how the burden of going forward with the evidence works and when it shifts in <u>Adler v. Commissioner</u>, 85 T.C. 535, 540 (1985):

> The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof with respect thereto. Rules 39, 142(a). Where the party pleading such issue makes a showing that the statutory notice was issued beyond the normally applicable statute of limitations, however, such party has established a prima facie case. At that point, the burden of going forward with the evidence shifts to the other side, and the other party has the burden of introducing evidence to show that the bar of the statute is not applicable. Where the other party makes such a showing, the burden of going forward with the evidence then shifts back to the party pleading the statute, to show that the alleged exception is invalid or otherwise not applicable. The burden or proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations. See <u>Stern Bros. & Co. v. Burnet</u>, 51 F.2d 1042 (8th Cir. 1931), affg. 17 B.T.A. 848 (1929); * * *

Petitioners filed their 1986 Federal income tax return on April 15, 1987. Respondent issued her notice of deficiency on March 31, 1993. Consequently, the deficiency is timely only if the 6-year statute of limitations applies.

Petitioners plead the 3-year statute of limitations as a bar to respondent's deficiency determination. Respondent pleads the 6-year statute of limitations in her answer. Petitioners argue that respondent has failed to meet her burden to show a greater

than 25-percent omission from gross income of an amount properly includable in gross income. Petitioners also argue that they have adequately disclosed the omitted amount in the corporation's Forms 5500 and 5310 filings. Respondent counters by alleging that the disclosure needs to be in the individual tax return itself, that the disclosure was inadequate, and that petitioners are estopped from arguing against the 6-year statute of limitations.

We need not decide the disclosure issue since respondent has failed to meet her initial burden of going forward with the evidence to show that the bar of the 3-year statute of limitations is not applicable. The parties agree as to the amount of gross income reported on petitioners' 1986 individual Federal income tax return. There is no question that petitioners omitted the merged amount from gross income. The merged amount is clearly greater than 25 percent of the gross income amount. Consequently, the only issue is whether respondent has established, by a preponderance of the evidence, that the merged amount is "properly includable" in petitioners' gross income for 1986.

Respondent asserts that petitioners are estopped from arguing that the merged amount is not properly includable in their gross income for 1986. We have held that petitioners are not estopped from asserting that the merged amount is not taxable in 1986. Petitioners have made the required prima facie case;

they have established that the deficiency notice was issued beyond the normally applicable statute of limitations.  The burden of showing, by a preponderance of the evidence, that the merged amount is properly includable in petitioners' gross income for 1986 is on respondent.

Respondent has conceded in her briefs that, but for the doctrine of judicial estoppel, the merged amount is properly taxable in 1987, the year of distribution.  We have accepted respondent's concession, for the reasons described above.  We hold that respondent has failed to make the showing necessary to avail herself of the 6-year statute of limitations.  Consequently, petitioners' 1986 individual Federal income tax return is not open for redetermination.  Therefore, we need not consider the remaining issues.

We are aware that petitioners will escape taxation of the contributions made on their behalf in 1986 and on the merged amount.  However, this result is a consequence of respondent's failure to issue a deficiency notice before the limitations period ran.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.